**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

J&B MEDICAL SUPPLY CO., INC.,

         Plaintiff,

v.

CENTERS FOR MEDICARE & MEDICAID
SERVICES and NOVITAS SOLUTIONS, INC.,
as Medicare Administrative Contractor with the
Centers for Medicare & Medicaid Services,

         Defendants.

Case No. 1:25-cv-_____

**EXPEDITED CONSIDERATION
REQUESTED**

**PRELIMINARY RELIEF SOUGHT BY
SEPTEMBER 16, 2025**

---

Gregory L. Ewing (Bar No. 484684)
DICKINSON WRIGHT PLLC
International Square
1825 Eye Street N.W., Suite 900
Washington, D.C. 20006
202-457-0160
GEwing@dickinsonwight.com
*Attorney for Plaintiff*

---

**COMPLAINT**

Plaintiff J&B Medical Supply Co., Inc. ("J&B" or "Plaintiff"), through its counsel, Dickinson Wright PLLC, states as follows for its Complaint against Defendants Centers for Medicare & Medicaid Services and Novitas Solutions, Inc. (collectively, "Defendants"):

**INTRODUCTION**

1.    This is a civil action seeking emergency relief from Defendants' complete failure to provide to J&B adequate procedural due process as required by the Fifth Amendment to the United States Constitution.

2.    On August 18, 2025, Novitas Solutions, Inc. ("Novitas"), on behalf of Centers for Medicare and Medicaid Services ("CMS"), issued to J&B a letter summarily revoking its Medicare enrollment, meaning J&B cannot supply medical equipment to Medicare beneficiaries or receive payment for the same through the Medicare program ("Revocation Letter"). *See* **Exhibit A**,

1

Revocation Letter. Per the Revocation Letter, J&B's Medicare enrollment will be revoked on September 17, 2025.

3.      The Revocation Letter identified purported violations of two Medicare enrollment regulations, which Notivas claimed it observed during a two-hour onsite audit of J&B's facility. The Revocation Letter informed J&B that it could cure the purported violations and preserve its enrollment by submitting a corrective action plan ("CAP") within 35 days of the Revocation Letter and/or by requesting reconsideration within 65 days of same. As explained below, J&B submitted both a CAP and a request for reconsideration *before* their respective deadlines, and *before* revocation would become effective on September 17—as of this filing, J&B has received no response from Defendants, meaning revocation is imminent.

4.      On August 29 and September 3, respectively, J&B submitted its CAP and a supplemental CAP. **Exhibit B**, CAP; **Exhibit C**, Supplemental CAP. Then, on September 10, J&B submitted its request for reconsideration. However, Defendants have not formally responded to J&B's CAP and reconsideration submissions, and there is no expectation that Defendants will do so before the effective date of revocation.

5.      In short, Defendants will revoke J&B's Medicare enrollment without a pre-deprivation hearing. Defendants' failure to provide adequate notice or a hearing constitutes a hallmark violation the Due Process Clause of the Fifth Amendment.

6.      Accordingly, this Court, respectfully, should issue immediate injunctive relief preserving J&B's Medicare enrollment during the pendency of the administrative process.

## THE PARTIES

7.      Plaintiff J&B is a family-owned, Michigan-based corporation with a principal place of business located at 50496 W. Pontiac Trail, Wixom, MI 48393–2088. J&B supplies Durable Medical Equipment, Prosthetics, Orthotics, and Supplies ("DMEPOS") to Medicare beneficiaries

in nearly every state across the country. Specifically, J&B services products for incontinence, urology, wound care, ostomy, COVID-19, breastfeeding, and diabetes. In total, J&B services 625 discrete products to almost 65,000 members each month. Of those 625 products, 160 (26%) are lifesaving diabetic and enteral supplies. J&B has been an enrolled Medicare supplier with billing privileges under 42 C.F.R. §§ 500, *et seq*. for more than 20 years without issue. As a result, J&B has accumulated 746 payor contracts through Medicaid, Medicare and Exchange, and commercial insurers and health plans (collectively, "Payor Contracts"), which require J&B to be enrolled in Medicare as a supplier. J&B also directly contracts with the States of Michigan, Wisconsin, and Indiana, which likewise require J&B's Medicare enrollment. Notably, J&B is the *sole and exclusive* supplier of incontinence and/or diabetes products in Michigan and Wisconsin, and one of only two suppliers of such products in Indiana.

8.      Defendant Centers for Medicare & Medicaid Services ("CMS") is a federal agency that is part of the United States Department of Health and Human Services ("DHHS"), which is an agency of the United States government charged with overseeing administration of the Medicare Act, 42 U.S.C. §§ 1395, *et seq*.

9.      Upon information and belief, Defendant Novitas Solutions, Inc. is a contractor engaged by CMS to conduct onsite audits of Medicare-enrolled medical equipment suppliers and has authority to issue notices revoking a supplier's Medicare enrollment on behalf of CMS.

## JURISDICTION AND VENUE

10.      This action arises under the Social Security Act, 42 U.S.C. §§ 301, *et seq*.; the Medicare Act, 42 U.S.C. §§ 1395, *et seq*.; and the Due Process Clause of the Fifth Amendment to the United States Constitution. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1651, and/or 42 U.S.C. § 1395ii.

11.     Through this action, J&B challenges <u>only</u> CMS's failure to provide notice and a pre-deprivation hearing prior to revoking J&B's Medicare enrollment (which will occur on September 17, 2025 absent judicial intervention). Under the Due Process Clause of the Fifth Amendment to the United States Constitution, J&B has an unequivocal right to notice and a hearing prior to deprivation of its property rights, including its participation in Medicare as a supplier. Although J&B has submitted to Defendants a CAP, Supplemental CAP, and a request for reconsideration, Defendants as a practical matter will be unable to review and adjudicate J&B's submissions prior to J&B's enrollment being revoked on September 17, 2025. And CMS's administrative law judges have no authority to issue an injunction to preserve the status quo. As a result, J&B is entitled to temporary injunctive relief from this Court preserving J&B's Medicare enrollment until a full and final administrative resolution is reached.

12.     For clarity, this action does not address the merits of CMS's putative revocation, and is not the vehicle by which J&B seeks to overturn it. That is, the due process violations alleged herein are entirely collateral to the ongoing administrative processes outlined in 42 C.F.R. § 424.535(a)(1) (concerning CAPs and reconsideration requests) and 42 C.F.R. § 498.5 (concerning administrative appeals). *See Robie v. Price*, No. 17-CV-03089, 2017 WL 3188572, at *4 (S.D.W. Va. July 26, 2017) (Medicare provider's "procedural due process claim is a constitutional claim that is entirely collateral to the substantive merits underlying" revocation). Accordingly, this Court has jurisdiction regardless of 42 U.S.C. § 405(h)'s administrative exhaustion requirement.

13.     Venue is proper in this Court under 28 U.S.C. § 1391(b), (e) and 5 U.S.C. § 703.

## STATUTORY AND REGULATORY BACKGROUND

14.     The Medicare Act provides health insurance benefits to elderly and disabled individuals. *See* 42 U.S.C. § 1395c. In significant part, CMS administers the Medicare Act and

enforces its associated rules and regulations as promulgated by the DHHS Secretary. *See* 42 U.S.C. § 1395hh(a)(1); 42 U.S.C. § 488 (identifying CMS certification and enforcement procedures).

15.     Under the Medicare Act, suppliers of certain medical equipment, including DMEPOS, can enroll in Medicare and apply to CMS to furnish such equipment to providers and beneficiaries in exchange for payment on those items through the Medicare program.

16.     In order to receive payments for such equipment through Medicare, suppliers must obtain a Provider Transaction Access Number ("PTAN"). *See* 42 U.S.C. § 1395m(j). To obtain a PTAN, a supplier must submit an application to CMS that certifies compliance with certain regulatory requirements. *See* 42 U.S.C. § 424.57(b).

17.     CMS has the authority to revoke a supplier's Medicare enrollment. CMS may revoke enrollment for several reasons, including noncompliance with enrollment requirements. *See* 42 C.F.R. § 424.535(a)(1).

18.     Consistent with the constitutional guarantee of the Due Process Clause of the Fifth Amendment, however, 42 C.F.R. § 424.82(e)(2) specifies that revocation of a supplier's Medicare enrollment is only effective after an opportunity to be heard. That opportunity was not afforded here to J&B.

## FACTUAL ALLEGATIONS

19.     On August 6, 2025, an auditor associated with Novitas (on behalf of CMS) conducted an onsite audit of J&B's Wixom, Michigan facility. The visit lasted two hours.

20.     During the visit, the Novitas auditor did not request documentation or ask about the ability of Medicare beneficiaries to access the facility, and did not request documentation or ask about J&B's contracts with manufacturers to repair or replace the medical equipment it supplies to beneficiaries.

21.     Novitas then issued to J&B the August 18, 2025 Revocation Letter identifying purported violations of two enrollment regulations for Medicare suppliers. Ex. A, at 1-2.

22.     The Revocation Letter first stated that J&B's "facility is not normally visited by beneficiaries" in violation of 42 C.F.R. § 424.57(c)(7). *Id*.

23.     The Revocation Letter also stated that J&B does not "maintain and replace at no charge or repair directly, or through a service contract with another company, Medicare-covered items rented to beneficiaries." *Id*. at 2.

24.     The only medical item J&B rents to beneficiaries are insulin pumps (E0784).

25.     Defendants have provided no further explanation or findings related to the claimed violations.

26.     Based on the foregoing purported violations, Novitas declared that J&B's Medicare enrollment, its PTAN, and its associated billing privileges would be revoked effective 30 days from the date of the Revocation Letter, which is September 17, 2025. Ex. A, at 1.

27.     The Revocation Letter provided certain administrative mechanisms through which J&B could cure its purported violations, or otherwise request reconsideration of the revocation. Specifically, J&B could submit a CAP under 42 C.F.R. § 424.535(a)(1) within 35 days of the Revocation Letter and/or submit a formal request for reconsideration within 65 days of same. The Revocation Letter directed submissions to yet another CMS contractor, Chags, which could receive J&B's papers at Chags Health Information Technology LLC, P.O. Box 45266, Jacksonville, Florida or its email address PEARC@c-hit.com.

28.     The Revocation Letter did not identify any timeframe within which Chags, Novitas, or CMS is required to respond to a CAP submission or a request for reconsideration. But J&B's independent research indicates that a decision on a CAP must be rendered within 60 days of

receipt, and a decision on a request for reconsideration must be rendered within 90 days of receipt. **Exhibit D**, CMS Form. Even so, absent this Court's intervention, both response deadlines fall long after September 17, 2025, the day revocation of J&B's Medicare enrollment will become effective.

29.     On August 29, 2025, J&B submitted its CAP to Chags at the email address provided in the Revocation Letter. *See* Ex. B. J&B's CAP stressed "that this matter be reviewed immediately and [requested that] the revocation be overturned." *Id.* at 1. J&B further requested "that any action be stayed until the CAP is reviewed." *Id.* at 4.

30.     Although not required, J&B submitted to Chags its Supplemental CAP on September 3. Ex. C. The Supplemental CAP renewed its request for Chags to review the CAP immediately, overturn the revocation, or else stay any further action pending review. The Supplemental CAP also confirmed that J&B has contracts with manufacturers of insulin pumps to repair or replace them at no cost to the beneficiary, and enclosed an exemplar contract to rebut Novitas's purported violation on that basis. *Id.* at 1. Again, insulin pumps are the only medical item that J&B rents to beneficiaries, and thus the only item relevant to Novitas's claimed violation.

31.     Shortly thereafter, on September 10, J&B submitted to Chags a formal request for reconsideration—long before the October 22, 2025 deadline to do so. **Exhibit E**, Reconsideration Request. Per the Revocation Letter, the request is J&B's "only opportunity to submit information during the administrative appeals process unless an ALJ allows additional information to be submitted." Ex. A, at 5.

32.     Upon receipt of the Revocation Letter, J&B took swift and expeditious action to prevent revocation of its Medicare enrollment, and used every method reasonably available to explain it has not committed any violations and to correct Defendants' decision to revoke J&B's

enrollment. Still, no Defendant has formally responded to J&B's CAP submissions or request for reconsideration.

33.    Consequently, in mere days, J&B's ability to supply medically necessary DMEPOS to Medicare beneficiaries will be revoked, and all of J&B's Payor Contracts and state contracts will terminate, without any adequate notice or a hearing.

34.    Worse, upon the effective date of revocation, J&B is "barred from reenrolling in the Medicare program for a period of one (1) year" pursuant to 42 C.F.R. § 424.535(c).

35.    The results of such revocation would be catastrophic to Medicare beneficiaries across the country, in addition to J&B itself.

36.    J&B services almost 65,000 members per month. If J&B's enrollment is revoked, the magnitude of the resulting disruption to the medical equipment supply line is difficult, if not impossible, to overstate.

37.    Defendants did not tailor their revocation to the single J&B product they address in the Revocation Letter (i.e., insulin pumps). Rather, J&B will be barred from servicing *any* of its other supplies for incontinence, diabetes, wound care, ostomy, and continuous glucose monitors. *See generally* Ex. A.

38.    Incontinence, for example, is just one of many conditions that J&B provides supplies to treat. J&B is the sole and exclusive source of incontinence supplies in Michigan and Wisconsin, and one of only two providers in Indiana. If J&B's Medicare enrollment is revoked, these states would have to terminate their contracts with J&B for lack of Medicare enrollment, and undertake the arduous process of finding, vetting, and approving a new provider. Once approved, J&B would have to partner with the new provider to transfer all member, health plan and/or state billing and delivery information to that provider. That transition takes months, and would force

tens of thousands of Medicare beneficiaries to forego medically necessary supplies during that time.

39.     As for J&B, its 746 Payor Contracts with health insurers and health plans across the country are the primary source of J&B's value. Each of those Payor Contracts requires J&B's enrollment in Medicare as a supplier with billing privileges. If J&B's enrollment is revoked, the Payor Contracts terminate. And, even if J&B could renew its 746 Payor Contracts on the exact same terms (it cannot), J&B could never regain the same members it currently services under those contracts.

40.     Further, J&B relies on its reputation and good standing in the Medicare program to sustain its contracts, carry out its services to beneficiaries, and acquire additional contract opportunities. DMEPOS suppliers rely on J&B's decades-long good standing with Medicare to refer business to J&B. Upon revocation, referrals will cease and J&B's 29-year reputation as an enrolled, regulatory compliant, and trusted Medicare supplier will be tarnished.

41.     J&B is confident that it will win its administrative appeal and preserve its Medicare enrollment as it has for more than 20 years without ever receiving a determination of noncompliance. But Defendants' actions will deprive J&B of its Medicare enrollment before it is afforded the opportunity to be heard. J&B has no recourse other than through this Court to uphold its right to notice and a hearing under the Due Process Clause of the Fifth Amendment.

42.     Accordingly, this Court should issue immediate temporary injunctive relief preserving J&B's Medicare enrollment until J&B receives proper notice of its purported violations and has an opportunity to be heard under the required administrative process.

## CLAIMS FOR RELIEF

## COUNT 1 – VIOLATION OF PROCEDURAL DUE PROCESS

43.     Plaintiffs restate and reallege the foregoing allegations as though fully restated herein.

44.     Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall "be deprived of life, liberty or property without due process of law." U.S. CONST. Amend. V.

45.     Specifically, a deprivation of life, liberty, or property must "be preceded by notice and an opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

46.     When the government seeks to revoke a supplier's Medicare enrollment, the Due Process Clause of the Fifth Amendment is triggered. *Robie*, 2017 WL 3188572, at *4 (The "expectation of continued participation in the [M]edicare program is a property interest protected by the due process clause of the [F]ifth [A]mendment.").

47.     Because the Due Process Clause is triggered by revocation of Medicare enrollment, a supplier is entitled to notice of the reasons giving rise to the putative revocation, and an opportunity to be heard during the required administrative process.

48.     Defendants purport to revoke J&B's Medicare enrollment, and its associated ability to supply medically necessary equipment in exchange for payment through the Medicare program, without any notice or explanation of their findings. Further, Defendants' putative revocation of J&B's Medicare enrollment will deprive J&B of its constitutionally protected property and liberty interests before J&B has an opportunity to be heard pursuant to the appropriate administrative process.

10

49.    Upon the effective date of revocation (September 17, 2025), all of J&B's state contracts and Payor Contracts will be terminated, meaning J&B will be unable to service supplies to beneficiaries across the county.

50.    The effect of J&B's deprivation will be irreparable to the many thousands of beneficiaries it serves because such deprivation will assuredly cause a disruption in the provision of necessary medical supplies to Medicare beneficiaries. As explained above, J&B is the sole and exclusive supplier of incontinence and/or diabetes products for the States of Michigan and Wisconsin.

51.    Defendants have no legitimate interest in violating J&B's procedural due process rights before they provide adequate notice and a hearing on the merits of the purported violations. Provision of such notice and a hearing would not pose any additional disproportional burden on Defendants.

52.    This Court should therefore declare that J&B is entitled to adequate notice and a hearing on the merits of the putative revocation, and stay Defendants' putative revocation until such adequate notice and hearing is provided under the required administrative process.

## PRAYER FOR RELIEF

WHEREFORE, J&B requests that this Honorable Court enter a temporary restraining order and a preliminary injunction preserving J&B's Medicare enrollment and the status quo until such time that Defendants have provided to J&B adequate notice and an opportunity to be heard under the required administrative process.

Respectfully submitted,

Dickinson Wright PLLC

Dated: September 10, 2025

*/s/ Gregory L. Ewing*
Gregory L. Ewing (Bar No. 484684)
International Square
1825 Eye Street N.W., Suite 900
Washington, D.C. 20006
202-457-0160
GEwing@dickinsonwight.com
*Attorney for Plaintiff*